UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REGINA M.,

                    Plaintiff,                          **DECISION AND ORDER**

      v.

                                              6:23-CV-06629 EAW

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

## INTRODUCTION

Represented by counsel, Plaintiff Regina M. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 4; Dkt. 8), and Plaintiff's reply (Dkt. 9). For the reasons discussed below, the Commissioner's motion (Dkt. 8) is granted, and Plaintiff's motion (Dkt. 4) is denied.

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on August 4, 2021. (Dkt. 3 at 21, 297-98, 299-305).[1] In her applications, Plaintiff alleged disability beginning

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

July 13, 2021. (*Id.* at 21, 297, 299). Plaintiff's applications were initially denied on December 23, 2021. (*Id.* at 165-84). An online video hearing was held before administrative law judge ("ALJ") Gretchen Mary Greisler on September 7, 2022. (*Id.* at 35-63). On September 29, 2022, the ALJ issued an unfavorable decision. (*Id.* at 21-30). Plaintiff requested Appeals Council review; her request was denied on September 6, 2023, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-12). This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he

deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of N.Y.*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* §§ 404.1509, 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental

work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

## I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff meets the insured status requirements of the Act on March 31, 2025. (Dkt. 3 at 23). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since July 13, 2021, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: depressive disorder, anxiety disorder, and post-traumatic stress disorder. (*Id.* at 24). The

ALJ further found that Plaintiff's medically determinable impairments of kidney and ureter stones and obesity were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 12.04, 12.06, and 12.15 in reaching her conclusion. (*Id.* at 24-26).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels with the following additional limitations:

> [Plaintiff] can perform simple tasks at a consistent, goal-oriented pace. She can tolerate occasional interaction with supervisors and coworkers and can perform tasks that do not require sharing of job tasks or working in close coordination with others; she cannot tolerate interaction with the public and cannot work around crowds of people. [Plaintiff] can handle reasonable levels of simple work-related stress in that she can make simple decisions directly related to the completion of her tasks and work in a position where she is not responsible for the work of others, and which has little change in daily routine or work duties or processes.

(*Id.* at 26). At step four, the ALJ found that Plaintiff was able to perform past relevant work as a factory helper and laborer, stores, as generally performed. (*Id.* at 29). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 30).

## II.     The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the ALJ erred in crafting the RFC because she "cherry-picked" and mischaracterized evidence and failed to build a logical bridge in assessing Plaintiff's limitations. (Dkt. 4-1 at 10-15).

The Court has considered Plaintiff's arguments and, for the reasons discussed below, finds them to be without merit.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *id.*, an ALJ is not a medical professional, and therefore he "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted).

However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).

It is well-settled that "an ALJ is not permitted to 'cherry pick' evidence that supports his RFC finding." *Michelle J. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00306 CJS, 2023 WL 2623587, at *4 (W.D.N.Y. Mar. 24, 2023) (defining cherry-picking as "inappropriately crediting evidence that supports administrative conclusions while disregarding differing

evidence from the same source" (citations omitted)). "Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022); *see also Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) ("When viewed alongside the evidence of the apparently cyclical nature of Estrella's depression, the ALJ's two cherry-picked treatment notes do not provide 'good reasons' for minimalizing Dr. Dron's opinion."). However, "an allegation of cherry-picking is seldom successful because crediting it would require a court to re-weigh record evidence," and "what a claimant may label as cherry-picking can often be described more neutrally as weighing the evidence." *Lisa T. v. Kijakazi*, No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *3 (D. Conn. June 21, 2022) (quotations and citations omitted).

Plaintiff argues that the ALJ cherry-picked favorable evidence and did not discuss certain evidence supporting greater restrictions than those imposed in the RFC. But Plaintiff's characterization of the written determination as cherry-picking evidence is not supported by the record. Rather, as explained below, the written determination makes plain that the ALJ considered Plaintiff's medical history, her testimony regarding her functioning, her activities of daily living, and the medical opinion evidence and treatment records in concluding that Plaintiff was capable of performing a full range of work at all exertional levels with certain non-exertional limitations.

Specifically, the ALJ discussed Plaintiff's testimony that she is unable to work due to her anxiety, depression, and post-traumatic stress disorder and has difficulty

remembering, concentrating, getting along with others, and dealing with stress or change. (Dkt. 3 at 27). Plaintiff testified that she lives with her girlfriend, her nine-year-old daughter, and her girlfriend's daughter. (*Id.* at 43). Plaintiff indicated that her girlfriend has a physical disability and at times is confined to bed. (*Id.* at 43-44). When her girlfriend is bedbound, Plaintiff handles things around the house. (*Id.* at 44). Plaintiff testified that she drives, can cook simple meals, tries to keep the house clean, plays video games and the game of "Magic the Gathering," and gets her daughter ready for school. (*Id.* at 55-57). The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 27).

The ALJ also addressed the objective medical evidence, including Plaintiff's receipt of mental health treatment for years. (*Id.*). The ALJ noted a July 15, 2021 record showing Plaintiff was oriented with an euthymic mood and appropriate affect and she reported good appetite, sleep, and energy level. (*Id.* at 28). The ALJ also acknowledged that Plaintiff's mood varied over the relevant time period but that her mental status examinations were otherwise largely within normal limits. (*Id.*). She also referenced multiple records reflecting Plaintiff's denial of sleep problems and medication side effects. (*Id.*). The ALJ noted an October 2021 record wherein Plaintiff reported only occasional panic attacks without distress. (*Id.*). The ALJ concluded that the clinical findings at the consultative

examination and Plaintiff's treatment history do not support Plaintiff's allegations and cited to multiple treatment records for that conclusion.  (*Id.*).

The ALJ also addressed Plaintiff's activities of daily living and concluded that they do not support Plaintiff's allegations.  At her consultative examination, Plaintiff reported that she cared for her daughter and girlfriend as well as a family dog and reported "that she could do cooking, cleaning, laundry, mowing, and daily shopping, and could drive, manage money, and p[i]ck up her daughter at the bus stop.  [Plaintiff] reported socializing, in person, by phone and by video cha[t], and reported leisure activities including video games, 'Magic the Gathering', and watching television.  [Plaintiff] told the consultative examiner, in December 2021, that she could dress, bathe, and groom, cook and prepare food, do general cleaning every day, do laundry almost every day, and drive; she reported doing crafts with the family and video games, and enjoying card games."  (*Id.*).  The ALJ concluded that Plaintiff's activities of daily living "suggest a greater functional capacity than is alleged."  (*Id.* at 29).

The ALJ also addressed the medical opinion evidence.  Jeanne Villani, Psy.D., the consultative examiner, examined Plaintiff on December 11, 2021.  (*Id.* at 1082-86).  Dr. Villani opined that Plaintiff has no evidence of limitation in interacting adequately with supervisors, coworkers, and the public.  (*Id.* at 1084-85).  She opined that Plaintiff has "[m]ild limitations in [an ability to] understand, remember, or apply simple and complex directions and instructions; use reason and judgment to make work-related decisions; sustain concentration and perform a task at a consistent pace."  (*Id.* at 1085).  The ALJ found this opinion partially persuasive because although it was consistent with the clinical

findings on examination, the objective medical evidence in the record support greater limitations, particularly in the ability to interact with others. (*Id.* at 29).

The ALJ concluded that the opinions of the State agency consultants, who opined that greater limitations were warranted, were more persuasive. (*Id.* at 29). The State agency consultants concluded that Plaintiff was capable of performing the basic mental demands of unskilled work in a setting that does not require rapid production work or demand regular contact with others. (*Id.* at 81-98, 99-116, 119-37, 138-56). The ALJ found these opinions supported by mental status examination findings and other evidence in the administrative record. (*Id.* at 29). In addition, the ALJ noted that the opinions were consistent with each other and the record as a whole. (*Id.*). She also highlighted the fact that there were no medical opinions that supported a conclusion that Plaintiff is unable to work. (*Id.*).

Plaintiff's characterization of the written determination as cherry-picking evidence, particularly with respect to her activities of daily living, is not supported by the record. Of course, an ALJ is not required to discuss every shred of evidence in the record in reaching a conclusion—rather, the ALJ must articulate how the disability determination is supported by substantial evidence, and provide an explanation that allows for meaningful review on appeal. *See Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." (citation omitted)). Further, to the extent there were medical records with differing assessments of Plaintiff's mental limitations, where there is conflicting evidence in the record, it is the ALJ's duty to consider and weigh those

discrepancies.  It is not the court's function to re-weigh the evidence.  *See, e.g., Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it.").  Here, the ALJ satisfied those obligations.

In addition, it is well-settled that an ALJ may consider the consistency of a claimant's activities of daily living with other evidence of record when evaluating credibility and determining the RFC.  *See, e.g., Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 436 (W.D.N.Y. 2018).  Indeed, the Commissioner's regulations expressly identify "daily activities" as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *see also Kimberly B. v. Comm'r of Soc. Sec.*, No. 5:22-CV-350 (ATB), 2023 WL 3318488, at *10 (N.D.N.Y. May 9, 2023) ("Under the regulations, plaintiff's daily activities are a factor the ALJ may properly consider.").  In considering activities of daily living, "[t]he issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence."  *Morris v. Comm'r of Soc. Sec.*, No. 5:12-CV-1795 MAD/CFH, 2014 WL 1451996, at *6 (N.D.N.Y. Apr. 14, 2014).  This is so because "[o]ne strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record."  *Id.*; *see also Rusin v. Berryhill*, 726 F. App'x 837, 840 (2d Cir. 2018) (severe limitations claimed by the plaintiff were

inconsistent with the plaintiff's report that he "cooked simple meals daily, left the house daily, can drive, and shopped for groceries every two weeks").

As discussed, in her decision, the ALJ noted that Plaintiff did housework, took care of her child and sometimes her girlfriend who has a disability, played video games, could manage money, and socialize. While Plaintiff argues that other medical records "reveal more limited examination at times," (Dkt. 4-1 at 11) and cites to numerous records that document anxious mood, limited insight and judgment, social anxiety and other stressors, the ALJ acknowledged those findings, which is reflected in part by the ALJ's finding of moderate limitations in each of the Paragraph B subject areas. (Dkt. 3 at 25). The Court recognizes that mental impairments in particular may have symptoms that wax and wane and that "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.'" *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)). But here, the ALJ did not solely rely on the assessment of Plaintiff's activities of daily living in making her assessment, but rather, considered those activities in addition to the medical treatment records, Plaintiff's testimony, and the medical opinion evidence, which all supported her conclusions as to disability.

In sum, Plaintiff's claims of cherry-picking essentially amount to an invitation for the Court to re-weigh the evidence of record, which it may not do. *Shane W. v. Comm'r of Soc. Sec.*, No. 1:23-CV-01313-CJS, 2025 WL 723116, at *8 (W.D.N.Y. Mar. 6, 2025) ("Indeed, what a claimant may label as cherry-picking can often be described 'more

neutrally as weighing the evidence.'" (quoting *Lisa T. v. Kijakazi*, 2022 WL 2207613, at

*3)); *Lisette R. o/b/o C.J.O. v. Kijakazi*, *No*. 3:22-CV-00784-TOF, 2023 WL 6357961, at

*4 (D. Conn. Sept. 29, 2023) (noting that cherry-picking "is not the proper term to apply

when an ALJ 'consider[s] the bad as well as the good' from a given source" (quoting *Sheila*

*Renee H. v. Kijakazi*, No. 3:21-cv-944 (TOF), 2022 WL 4181723, at *7 (D. Conn. Sept.

13, 2022))).

        Consequently, the ALJ's assessment of the evidence was proper and supported by

the record.  In arriving at the RFC, the ALJ's reasoning "must always be sufficiently

discernible as to allow a reviewing court to ensure that the ALJ employed the proper

standards and rendered a decision supported by substantial evidence." *Gail F. v. Comm'r*

*of Soc. Sec.*, No. 21-CV-120-FPG, 2022 WL 17578465, at *4 (W.D.N.Y. Dec. 12, 2022)

(quotations and citation omitted).  The Court has no difficulty gleaning the basis for the

ALJ's RFC finding from her decision and it therefore rejects Plaintiff's argument that the

ALJ failed to build a logical bridge between the evidence and her determination.  Remand

is accordingly not warranted.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 8) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 4) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: March 25, 2025
     Rochester, New York